Matthew W. Ruan (SBN 264409)
Jonathan M. Jagher (*pro hac vice forthcoming*)
Nicholas R. Lange (*pro hac vice forthcoming*)
**JUSTICE JAGHER LONDON & MILLEN LLC**
100 Tri-State International Drive,
Suite 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
Fax: (224) 632-4521
mruan@jjlmlaw.com
jjagher@jjlmlaw.com
nlange@jjlmlaw.com

Katrina Carroll (*pro hac vice forthcoming*)
**CARROLL SHAMBERG LLC**
111 W. Washington Street Suite 1240
Chicago, IL 60602
Tel: (872) 215-6205
katrina@csclassactions.com

*Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ISABELO PASCUAL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ANTHROPIC, PBC<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**<br>**2. VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**<br>**3. VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**<br>**4. BREACH OF CONTRACT**<br>**5. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**6. QUASI-CONTRACT AND RESTITUTION BASED ON UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Isabelo Pascual brings this action individually and on behalf of all others similarly situated against Defendant Anthropic, PBC ("Anthropic" or "Defendant"). The allegations contained herein are based on Plaintiff's personal knowledge as to himself and his own actions, on counsel's investigation, and on information and belief as to all other matters.

## NATURE OF THE ACTION

1.   This is a consumer class action arising from Anthropic's retention of subscription fees while its own backend changes and production defects materially reduced subscribers' practical access to its flagship product: Claude. Anthropic's own admitted failures caused users' paid usage limits to deplete more quickly, and diminished the value of the services subscribers purchased.

2.   Anthropic develops and operates Claude, an artificial-intelligence platform offered through free and paid subscription tiers. Individual subscribers pay approximately $20 per month for Claude Pro, $100 per month for Max 5x, or $200 per month for Max 20x. Those plans are subscription packages that provide access to multiple Claude products within each tier.

3.   The most familiar product is regular Claude: the web, desktop, and mobile chat experience through which subscribers type prompts, upload documents, request research or analysis, draft or edit text, and ask Claude to perform other general tasks. This experience is analogous to an ordinary paid generative-AI chat subscription.

4.   Paid Pro and Max plans also include access to Claude Code, a distinct, specialized "agentic" coding tool. Claude Code can read a software codebase, edit project files, run commands, debug problems, and integrate with development tools. A person can purchase Pro or Max and use only regular Claude, only Claude Code, or both.

5. The challenged conduct affected two overlapping groups of paid subscribers. First, Anthropic announced a March 2026 peak-hour change under which Pro and Max subscribers would move through five-hour session limits faster than before. That theory concerns paid subscribers who used regular Claude, Claude Code, or both. Second, Anthropic later admitted that separate March-April 2026 backend changes specifically degraded the Claude Code tool and related products,

CLASS ACTION COMPLAINT

causing lower intelligence, lost context, repeated work, cache misses, and faster-than-expected usage depletion.

6.   For paid accounts, activity across regular Claude, Claude Code, and other Claude product surfaces counted against shared plan limits. Anthropic nevertheless controlled the nonpublic systems that measured, allocated, and depleted that shared usage. Although subscribers could see their remaining usage percentage decline, they could not determine whether it reflected legitimate requests, productive work, a peak-hour capacity policy, hidden processing, or a backend defect.

7.   This action challenges whether Anthropic may materially impair the practical service delivered during a paid subscription period, fail to adequately disclose and account for that impairment, and retain the full subscription price without compensation proportionate to the loss.

8.   Plaintiff and Class Members paid more for their subscriptions than the diminished services were worth. Regular Claude users were allegedly deprived of paid access when Anthropic accelerated session-limit depletion during peak hours. Claude Code users were exposed to that same capacity reduction and, in addition, to product-specific defects that wasted usage and impaired coding workflows.

9.   Thus, Plaintiff brings this action on behalf of affected Claude subscribers to recover the economic value Anthropic retained while delivering materially diminished paid access and to obtain appropriate declaratory and injunctive relief.

## JURISDICTION AND VENUE

### A.  Jurisdiction

10. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the proposed Class includes more than 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Anthropic because Anthropic maintains its headquarters and principal place of business in this District, conducts substantial business in this District, and directed the conduct alleged herein from this District.

12. Upon information and belief, Anthropic developed, marketed, priced, operated, and

3

CLASS ACTION COMPLAINT

administered the Claude subscription services challenged in this action from its headquarters and other facilities located within this District.

13. Anthropic has purposefully availed itself of the privilege of conducting business within this District and has derived substantial revenue from the sale of Claude subscriptions to consumers in this District and throughout the United States.

14. Anthropic's Consumer Terms also provide that disputes relating to its services are subject to the jurisdiction of the state and federal courts located in San Francisco, California.

**B. Venue**

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Anthropic resides in this District.

16. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

17. Anthropic conducts substantial and continuous business in this District and regularly engages in interstate commerce from this District.

18. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because Anthropic is subject to personal jurisdiction in this District.

**DIVISIONAL ASSIGNMENT**

19. Assignment to the San Francisco Division is proper under Civil Local Rule 3-2 because Anthropic's principal place of business is in San Francisco County and the challenged product, marketing, capacity, and refund decisions emanated from that county.

**PARTIES**

20. Plaintiff Isabelo Pascual is a natural person and citizen of California, residing in Los Angeles. In 2025, Plaintiff purchased a Claude Pro subscription directly from Anthropic for $20 per month. Plaintiff used both regular Claude and Claude Code during all or part of the period from March 4 through May 6, 2026.

21. Defendant Anthropic, PBC is a Delaware public benefit corporation with its principal place of business at 500 Howard Street, San Francisco, California 94105. Anthropic develops, owns, markets, sells, and operates Claude, its artificial-intelligence platform.

4

CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

### A.  Anthropic Sells Paid Claude Plans as Distinct Tiers of Practical Access

22. Anthropic launched Claude in 2023 and sells access through free, individual, team, enterprise, and usage-based offerings. The individual paid plans relevant here are Pro, Max 5x, and Max 20x.

23. The Pro plan costs approximately $20 per month. Anthropic describes Pro as offering more usage than the free plan and priority access during periods of high demand.[1]

24. The Max plan costs $100 or $200 per month. Anthropic highlights more usage, higher output limits, and priority access, and markets Max 5x and Max 20x as providing five or twenty times the usage of Pro per session. Anthropic also promotes Max as enabling subscribers to avoid interruptions and remain in productive workflows.[2]

---

[1] What is the Pro plan?, Claude Help Center, https://support.claude.com/en/articles/8325606-what-is-the-pro-plan  (last updated June 10, 2026).

[2] What is the Max plan?, Claude Help Center, https://support.claude.com/en/articles/11049741-what-is-the-max-plan (last updated July 14, 2026); Overview, Claude Code Docs, https://docs.anthropic.com/en/docs/claude-code/overview; Use Claude Code with Your Pro or Max Plan, Claude Help Center, https://support.claude.com/en/articles/11145838-use-claude-code-with-your-pro-or-max-plan.

5
CLASS ACTION COMPLAINT



*Anthropic's public-facing individual-plan comparison.*

25. The pricing interface places these representations at the center of the subscription decision. It tells prospective subscribers that Max includes everything in Pro plus increased usage, higher limits, early access, and priority access, and directs consumers to choose five or twenty times more usage than Pro. The only generalized qualification below the plan cards states that usage limits apply and that prices and plans may change at Anthropic's discretion.

26. Anthropic's Consumer Terms confirm that the content, features, and services included in a subscription are described in the order process. Thus, the purchase flow and plan descriptions define what the paid subscription is supposed to provide.[3]

**B.  Paid Subscribers Can Use Regular Claude, Claude Code, or Both**

27. Regular Claude is the general-purpose chat experience available through Claude's website and consumer applications. A subscriber interacts with regular Claude by entering prompts or uploading materials and asking Claude to answer questions, conduct research, analyze information,

---

[3] Anthropic, *Consumer Terms of Service* § 6.1 (effective Oct. 8, 2025), https://www.anthropic.com/legal/consumer-terms ("The content, features, and other services provided as part of your Subscription, and the duration of your Subscription, will be described in the order process.").

CLASS ACTION COMPLAINT

draft or edit content, summarize documents, or perform other conversational tasks.

28. Claude Code is a separate product surface designed for "agentic coding tool" work. Anthropic describes Claude Code as a tool that can read a user's codebase, edit files, run commands, and integrate with development tools.[4] Subscribers may access it through a terminal, desktop application, or browser-based interface. Claude Code is included as a benefit of paid Pro and Max plans.[5]

29. This action addresses two overlapping forms of diminished subscription value. Subscribers who used regular Claude, Claude Code, or both were subject to Anthropic's shared usage-allocation system and the alleged conduct here, including peak-hour reduction. The subset who used Claude Code was also exposed to the separate March-April 2026 coding-specific defects described below.

**C. Anthropic Uses Shared, Opaque Limits Across Regular Claude and Claude Code**

30. Claude usage is not measured by a simple, fixed number of prompts. Anthropic describes a subscriber's usage limit as a "conversation budget" that governs how many messages a user may send or how long a user may work with Claude Code before the limit resets.[6] Usage varies with the selected model, message and attachment length, conversation history, feature use, and other factors controlled by Anthropic.[7]

31. For paid subscribers, activity across regular Claude, Claude Code, and Claude Desktop counted against the same account-level usage limits. Thus, a subscriber who used both regular Claude and Claude Code did not receive separate allowances for each product. Usage consumed in one surface reduced the capacity remaining for the other.

---

[4] Anthropic, *How Claude Code Works*, Claude Code Docs, https://code.claude.com/docs/en/how-claude-code-works (last visited July 15, 2026)

[5] Anthropic, *Use Claude Code with Your Pro or Max Plan*, Claude Help Center (June 11, 2026), https://support.claude.com/en/articles/11145838-use-claude-code-with-your-pro-or-max-plan

[6] Anthropic, *How Do Usage and Length Limits Work?*, Claude Help Center, https://support.claude.com/en/articles/11647753-how-do-usage-and-length-limits-work (last visited July 15, 2026) ("Think of this as your 'conversation budget' that determines how many messages you can send to Claude, or how long you can work with Claude Code, before needing to wait for your limit to reset.").

[7] Anthropic, *Usage Limit Best Practices*, Claude Help Center, https://support.claude.com/en/articles/9797557-usage-limit-best-practices (last visited July 15, 2026).

CLASS ACTION COMPLAINT

32. Anthropic imposes five-hour session limits and weekly limits. The usage displayed to subscribers is a percentage of those limits and the time remaining until reset. The dashboard does not provide the underlying token-level or event-level information necessary to determine how much included usage was consumed by visible prompts, hidden reasoning, system instructions, context reprocessing, cache misses, tool calls, or other internal operations.

33. Anthropic alone selects the model defaults, system prompts, caching rules, context-management procedures, routing, and capacity-allocation policies that affect how quickly a subscriber consumes their allotted usage allowance and how useful the resulting output is. Subscribers cannot inspect those systems before purchase or independently verify them during use of Claude.

34. Therefore, even if a subscriber sees the usage meter decline, they do not know whether the reduction reflects productive work, a changed policy, or a defect that caused Claude to repeat or reprocess work. Anthropic possesses the records needed to identify the cause, affected accounts, and amount of usage consumed.

**D.  Anthropic Reduced Peak-Hour Session Capacity for Pro and Max Subscribers**

35. On March 26, 2026, Anthropic engineer Thariq Shihipar publicly announced that Anthropic was adjusting five-hour session limits for Free, Pro, and Max subscribers during weekday peak hours. The statement described that subscribers would move through those session limits faster than before even though nominal weekly limits would remain unchanged.[8]

---

[8] Thariq Shihipar (@trq212), X post (Mar. 26, 2026), https://x.com/trq212/status/2037254607001559305.

CLASS ACTION COMPLAINT



*March 26, 2026 public statement concerning peak-hour session limits.*

36. Anthropic further acknowledged that approximately seven percent of users—particularly Pro subscribers—would hit session limits they would not have hit before the change. It advised users to move token-intensive work to off-peak hours to extend the practical duration of their paid sessions.

37. Although Anthropic announced the policy via X.com, it did not provide its own paying subscribers with an individualized explanation of how the change would affect their accounts or the value of an overlapping subscription period.

38. Anthropic's March 26 announcement was directed to Free, Pro, and Max "subscribers." Because paid-plan usage was shared across regular Claude and Claude Code, the reduction diminished the practical capacity available to paid subscribers through whichever product surface they used.

39. The change therefore reduced when and how paid subscribers could use their plans. A nominal weekly allowance is not equivalent to uninterrupted practical access if Anthropic

9

CLASS ACTION COMPLAINT

accelerates depletion during the hours when subscribers need the service.

40. Anthropic continued collecting the same subscription prices during this period. As of the filing of this complaint, Anthropic has also not provided any automatic pro rata credit to subscribers who were subjected to the peak-hour reduction.

**E.  March-April 2026 Defects Specifically Degraded Claude Code**

41. On April 23, 2026, Anthropic published an engineering "postmortem" identifying three separate changes that had affected Claude Code, Claude Cowork, and the Claude Agent SDK during the preceding weeks.[9] These three admitted defects affected Claude Code, Claude Cowork, and the Claude Agent SDK.

42. First, on March 4, Anthropic changed Claude Code's default reasoning effort from high to medium. Anthropic provided some users an in-product notice that the default had changed, but did not disclose that the change reduced intelligence, the extent of the resulting degradation, or its effect on the value of paid access. Anthropic later admitted that the change was the wrong tradeoff and reversed the default on April 7.[10]

43. Second, on March 26, Anthropic deployed a caching and context-management change intended to reduce the cost and latency of resuming inactive sessions. A "bug" caused Claude to discard prior reasoning on every subsequent turn after a session crossed the idle threshold, rather than only once. Anthropic further explained that the defect compounded over time. Claude continued working without the reasoning history that explained its earlier decisions, causing forgetfulness, repetition, and unusual tool choices. The same defect also caused repeated cache misses, which Anthropic identified as the likely cause of reports that usage limits were draining faster than expected. Anthropic stated that it fixed the bug on April 10.[11]

44. Third, on April 16, Anthropic introduced a system-prompt instruction intended to reduce verbosity (how long or wordy Claude's responses are) but Anthropic later determined that the

---

[9] Anthropic, *An Update on Recent Claude Code Quality Reports*, (Apr. 23, 2026), https://www.anthropic.com/engineering/april-23-postmortem

[10] Id. at § "A Change to Claude Code's Default Reasoning Effort"

[11] Id.

CLASS ACTION COMPLAINT

instruction impaired coding quality. Anthropic states that reverted that change on April 20.[12]

45. These changes affected the core functions for which Claude Code subscribers paid. The peak-hour reduction shortened the practical duration of paid sessions, while the caching and context-management defect caused usage limits to drain faster than expected.

46. The same defect also caused Claude Code to lose track of prior work, repeat tasks, and make unusual tool choices.

47. The reasoning-default and system-prompt changes separately reduced Claude Code's intelligence and coding quality. Together, these events show that Anthropic's backend decisions materially reduced both the quality of the service and the efficient use of subscribers' paid capacity.

### F. Anthropic's Purported Remedial Efforts Did Not Compensate Subscribers for the Lost Paid Period

48. Anthropic concluded its April 23 postmortem by acknowledging that the degraded service was "not the experience users should expect from Claude Code" and announcing that it was resetting usage limits for all subscribers. The reset was a blanket operational measure rather than an individualized remedy.

49. Anthropic also did not provide subscribers with an account-level accounting of the usage consumed because Claude repeatedly discarded prior reasoning, reprocessed information, or incurred cache misses. As a result, subscribers could not determine whether the reset restored the usage they had lost.

50. Perhaps most importantly, Anthropic did not refund or credit the portion of their subscription fees attributable to the weeks of degraded service already received. It instead, retained the full subscription revenue for those periods.

51. On May 6, 2026, Anthropic announced that increased compute capacity allowed it to double Claude Code's five-hour usage limits for paid subscribers and remove the peak-hour reduction previously applied to Claude Code use by Pro and Max subscribers.[13]

[12] Id.

[13] Anthropic, *Higher Usage Limits for Claude and a Compute Deal with SpaceX*, Anthropic (May 6, 2026), https://www.anthropic.com/news/higher-limits-spacex

CLASS ACTION COMPLAINT

52. The announcement confirms that backend capacity decisions materially determined the amount and timing of access delivered to subscribers.

53. The May 6 increase was prospective. It did not compensate subscribers for reduced peak-hour access from March 26 through May 6 or for the quality and usage-drain defects that operated during March and April.

**G. Plaintiff's Experience**

54. Plaintiff Isabelo Pascual purchased the subscription directly from Anthropic, subscribed to the Pro plan in 2025, and paid $20 per month. Before subscribing, Plaintiff reviewed Anthropic's plan description, which represented that the Pro plan would provide at least five times the usage per session available through Anthropic's free service, priority access during high-traffic periods, and access to Claude Code. Plaintiff understood that the paid plan would provide materially greater and more reliable usage during the subscription period.

55. During the Class Period, Plaintiff used both regular Claude and Claude Code for personal and professional purposes.

56. When using regular Claude, Plaintiff accessed it through Anthropic's website, the desktop application, and the iPhone application, submitted prompts and relied on the shared usage included with the paid plan.

57. Before the challenged changes, Plaintiff's regular-Claude sessions were generally consistent. Relatively simple tasks that did not require substantial usage ordinarily did not unexpectedly exhaust his five-hour session limit.

58. Plaintiff used Claude Code between March 4 and May 6, 2026, through the Claude desktop application and browser page. Plaintiff used Claude Code to access codebases, edit files, run commands, and assist with software projects.

59. In February 2026 and earlier, before the challenged changes, Plaintiff's Claude Code sessions were generally consistent, and ordinary tasks did not unexpectedly exhaust his five-hour session limit.

60. During the affected period, Plaintiff experienced materially faster limit depletion, unexpectedly early exhaustion of his five-hour session limit, lower-quality work, and interruptions

CLASS ACTION COMPLAINT

to his Claude and Claude Code sessions. Tasks that previously consumed relatively little usage began exhausting his session limit. On certain occasions, Anthropic continued to report that Plaintiff's session was full even after he purchased additional usage and even though more than ten hours had passed since the limit was reached.

61. Because of the reduced and degraded service, Plaintiff was required to stop working, wait for his limits to reset, and purchase additional usage after exhausting the usage included with his Pro subscription. At various times during his subscription, Plaintiff paid additional usage charges. Even after purchasing additional usage, Plaintiff sometimes remained unable to continue working because Anthropic continued to report that his session was full.

62. Anthropic retained Plaintiff's subscription fees and additional usage payments for the affected billing periods. Plaintiff did not receive the full practical value of the paid plan and overpaid by at least the difference between the value represented and the diminished value delivered.

63. Had Anthropic adequately and timely disclosed that Plaintiff's usage could be depleted materially faster than expected, that the quality of the service could be degraded, and that Plaintiff could remain unable to use the service even after purchasing additional usage, Plaintiff would not have subscribed or renewed on the same terms, would have paid less, or would have canceled and selected another service.

## CLASS ACTION ALLEGATIONS

64. **Class Definitions.** Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), Plaintiff brings this action on behalf of himself and all other similarly situated persons defined as follows:

**Nationwide Class:**

All persons in the United States who purchased a Claude Pro, Max 5x, or Max 20x subscription directly from Anthropic and used that subscription during the Class Period.

**California Subclass:**

All persons in California who purchased a Claude Pro, Max 5x, or Max 20x subscription directly from Anthropic and used that subscription during the Class Period.

65. The "Class Period" is the period beginning March 4, 2026, when the backend defects and service degradations alleged herein began affecting Claude subscribers, and ending May 6, 2026, when Anthropic announced that it had eliminated the peak-hour reduction in subscriber usage limits, or such other period as may be established through discovery.

66. Plaintiff expressly reserves the right to modify or refine the Class and Subclass definitions, including adding subclasses as necessary, and Class Period based on information obtained through discovery and prior to filing a motion for class certification.

67. Excluded from the Class and Subclass are Anthropic; any parent, subsidiary, affiliate, or entity in which Anthropic has a controlling interest; Anthropic's officers, directors, and employees; Anthropic's legal representatives, heirs, successors, and assigns; counsel for the parties in this action and their employees; any judge assigned to this action and members of the judge's immediate family and staff; and any person who timely and validly requests exclusion from the Class.

68. **Numerosity and Ascertainability.** The members of the Nationwide Class and California Subclass are so numerous that their individual joinder would be impracticable. Although the precise number of Class Members is presently within Anthropic's exclusive knowledge, Plaintiff anticipates the number to be in hundreds of thousands or millions. Class membership is ascertainable through Anthropic's subscriber-account, billing, plan, renewal, product-surface activity, session, usage, caching, incident, and remediation records, including records identifying accounts subject to the peak-hour reduction and accounts that used Claude Code during the admitted defects.

69. **Typicality.** Plaintiff's claims are typical of those of the Nationwide Class and California Subclass. Like other Class Members, Plaintiff purchased a paid Claude subscription directly from Anthropic, used Claude during the Class Period, and was subject to the same standardized terms, plan representations, shared usage-allocation systems, disclosures, and alleged omissions. Plaintiff experienced diminished access, accelerated usage depletion, degraded Claude performance, or another reduction in subscription value arising from one or more of the challenged practices. Plaintiff's claims therefore arise from the same course of conduct and legal theories as the claims of the overlapping groups within the Classes.

70. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class

14
CLASS ACTION COMPLAINT

and Subclass. Plaintiff's interests coincide with, and are not antagonistic to, the interests of other Class Members. Plaintiff has retained counsel experienced in complex consumer-protection and class-action litigation, and Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and Subclass.

71. **Common Questions of Law and Fact Predominate.** Questions of law and fact common to the Class and Subclass predominate over any questions affecting only individual Class Members because Anthropic engaged in a standardized course of conduct affecting subscribers through common subscription terms, representations, backend systems, usage policies, and corrective measures. Common questions include:

   a. Whether Anthropic represented that its paid Claude plans provided materially greater usage, higher limits, priority access, and fewer interruptions than lower-priced or free plans;

   b. Whether Anthropic altered how paid usage was measured, allocated, or depleted during the Class Period, including whether the peak-hour reduction applied to shared account usage through regular Claude, Claude Code, or both;

   c. Whether the admitted caching, context-management, reasoning, prompt, routing, or related defects specifically caused Claude Code users to experience degraded performance, repeated processing, lost context, or accelerated usage depletion;

   d. Whether Anthropic's representations and omissions concerning the different Claude product surfaces, shared usage limits, paid access, and practical capacity were likely to mislead reasonable consumers in light of the service actually delivered;

   e. Whether Anthropic knew of the challenged changes and defects, possessed material information unavailable to subscribers, and adequately disclosed their effects;

   f. Whether Anthropic's conduct breached its contracts with Class Members or violated the implied covenant of good faith and fair dealing;

   g. Whether Anthropic's conduct violated California's Unfair Competition Law, False Advertising Law, or Consumers Legal Remedies Act;

   h. Whether Anthropic was unjustly enriched by retaining subscription fees and

additional usage payments attributable to materially diminished or prematurely depleted paid access, and whether Plaintiff and Class Members are entitled to restitution of those amounts.

i.   Whether Class Members suffered economic injury and whether the diminished value of the affected subscriptions can be determined on a classwide basis using common evidence, and whether Class Members are entitled to damages, restitution, declaratory relief, injunctive relief, or other remedies.

72. **Superiority.** A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The claims of individual Class Members are relatively modest compared with the expense and burden of prosecuting separate actions against Anthropic. Absent class treatment, many Class Members would have no practical means of obtaining relief. Separate actions would also risk inconsistent rulings concerning the same subscription terms, representations, backend practices, and corrective measures. Class treatment will permit these common issues to be resolved in a single proceeding, conserve judicial resources, avoid duplicative discovery and litigation, and provide a uniform remedy for similarly situated subscribers. Plaintiff is unaware of any difficulties that would render this action unmanageable as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.**
*(On behalf of Plaintiff and the California Subclass)*

73. Plaintiff incorporates the preceding allegations as though fully set forth herein.

74. Anthropic is a "person" within the meaning of Cal. Bus. & Prof. Code § 17201 and engaged in business acts and practices affecting consumers in California.

75. Anthropic's conduct constitutes unlawful, unfair, and fraudulent business acts and practices.

76. The conduct is unlawful because it violates the FAL and CLRA and constitutes breach of contract and breach of the implied covenant of good faith and fair dealing.

77. The conduct is unfair because Anthropic retained subscription fees while nonpublic or inadequately disclosed backend changes materially reduced the practical value of paid access

CLASS ACTION COMPLAINT

through regular Claude, Claude Code, or both. The conduct is also tethered to California policies favoring truthful advertising and accurate disclosure of material characteristics, benefits, quantities, and limitations of consumer services.

78. The conduct is fraudulent because the paid-plan descriptions, partial disclosures, and omissions were likely to mislead reasonable consumers into believing that the shared Pro or Max allowance would provide the represented practical access through the product surfaces they used, subject to disclosed limits, rather than faster peak-hour depletion or, for Claude Code users, wasted usage and degraded workflows caused by inadequately disclosed backend policies and defects.

79. Plaintiff relied on Anthropic's material representations and omissions when subscribing, renewing, and continuing to pay for Claude. Plaintiff lost money or property by paying more than the diminished service was worth and, if applicable, by incurring additional charges after premature limit exhaustion.

80. Plaintiff and California Subclass Members are entitled to restitution measured by the difference between the amount paid and the value of the service actually delivered during the affected periods, together with declaratory and injunctive relief and any other relief authorized by law.

81. Plaintiff lacks an adequate remedy at law to prevent future misleading subscription practices or obtain public injunctive relief. Restitution is sought only to the extent legal damages are unavailable or incomplete, including where contract or privity defenses would otherwise leave money acquired through the challenged practices unrecovered, and is not sought as a duplicative recovery.

## SECOND CAUSE OF ACTION

**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.**
*(On behalf of Plaintiff and the California Subclass)*

82. Plaintiff incorporates the preceding allegations as though fully set forth herein.

83. Anthropic disseminated or caused to be disseminated advertising and promotional statements concerning Claude Pro and Max, including statements about increased usage, higher output limits, priority access, continuity, Claude Code access, and the practical ability to remain in

productive workflows.

84. Those statements, together with Anthropic's omissions of known or exclusively controlled material facts, were untrue or misleading because Anthropic could and did materially reduce shared session access affecting regular Claude and Claude Code users and, separately, deploy changes that impaired consume included Claude usage, without adequate, timely, and complete disclosure.

85. Anthropic knew, or in the exercise of reasonable care should have known, that its advertising was misleading in light of its control over the challenged policies and systems, user reports, internal investigations, and eventual public admissions and remedial changes.

86. Plaintiff saw and relied on the challenged advertising in purchasing or renewing a paid plan and suffered economic injury by paying more than the service was worth.

87. Plaintiff seeks restitution, public injunctive relief, attorneys' fees where authorized, and other appropriate relief. Equitable relief is sought only to the extent legal remedies are unavailable or inadequate and is not sought as a duplicative recovery.

### THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.**
*(On behalf of Plaintiff and the California Subclass)*

88. Plaintiff incorporates the preceding allegations as though fully set forth herein.

89. Plaintiff and California Subclass Members are "consumers," Anthropic is a "person," the sale of paid Claude plans constitutes "transactions," and the subscriptions are "services" within the meaning of Cal. Civ. Code § 1761.

90. Anthropic violated Cal. Civ. Code § 1770(a), including subsections (5), (7), and (16), by representing that the subscriptions had characteristics, benefits, quantities, standards, or qualities they did not have during the affected periods and by representing that the service had been supplied in accordance with prior representations when it had not.

91. Anthropic's omissions were actionable because Anthropic possessed exclusive knowledge of the product surfaces governed by the shared usage system, the scope of the peak-hour policy, and the Claude Code-specific backend defects; actively controlled information about their operation and impact; and made partial representations about usage, limits, priority, product access, and

remediation that were misleading without disclosure of the omitted facts.

92. The challenged representations and omissions were material and likely to deceive reasonable consumers.

93. Plaintiff relied on these representations and omissions and suffered actual economic damage by paying for diminished subscription value and, if applicable, additional access.

94. Plaintiff presently seeks injunctive relief only and will amend to seek damages after satisfying § 1782.

95. Plaintiff has filed the declaration regarding venue required by Cal. Civ. Code § 1780(d).

## FOURTH CAUSE OF ACTION

### Breach of Contract
*(On behalf of Plaintiff and the Nationwide Class and California Subclass)*

96. Plaintiff incorporates the preceding allegations as though fully set forth herein.

97. Plaintiff and Class Members who purchased directly from Anthropic entered valid subscription agreements with Anthropic. The agreements include Anthropic's Consumer Terms and the subscription content, features, and services described in the order process, including the selected paid tier's represented usage, output limits, priority access, access to regular Claude and Claude Code, and related paid-plan benefits.

98. Plaintiff and Class Members performed by paying the required recurring fees and complying with the material subscription terms.

99. Anthropic breached the agreements by materially failing to provide the described paid access during the affected periods, including by subjecting subscribers using regular Claude, Claude Code, or both to inadequately disclosed reduced session capacity and by allowing Claude Code-specific defects to impair core functionality and consume the shared included usage of subscribers who used that product, while retaining the subscription fees and providing no proportional refund or credit.

100. As a direct and proximate result of that breach, Plaintiff and Class Members suffered damages, including overpayment, diminished subscription value, and any incremental amounts paid to replace prematurely exhausted access.

CLASS ACTION COMPLAINT

## FIFTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing
*(On behalf of Plaintiff and the Nationwide Class and California Subclass)*

101.    Plaintiff incorporates the preceding allegations as though fully set forth herein.

102.    Every subscription agreement imposed a duty on Anthropic not to exercise contractual discretion in a manner that unfairly frustrated subscribers' right to receive the benefits of the agreement.

103.    The central benefit of the paid subscription was usable access to the paid Claude services at the represented tier, including regular Claude and, for subscribers who chose to use it, Claude Code. Anthropic retained exclusive discretion over shared capacity allocation, session depletion, model defaults, caching, context management, system prompts, product-surface routing, disclosure, and remediation.

104.    Anthropic breached the implied covenant by exercising or administering that discretion in a manner that materially reduced shared paid access and, for Claude Code users, wasted included usage and impaired core workflows, while withholding adequate information needed to identify the affected product surface, detect and measure the loss, and obtain proportional compensation.

105.    This claim does not impose duties inconsistent with the express agreement. It enforces the agreement's existing purpose and prevents Anthropic from using broad discretion to make the promised paid-tier benefits illusory or substantially worthless during part of the subscription term.

106.    As a direct and proximate result, Plaintiff and Class Members suffered damages, including overpayment, diminished subscription value, and any additional charges incurred because included access was prematurely exhausted.

CLASS ACTION COMPLAINT

## SIXTH CAUSE OF ACTION

### Quasi-Contract and Restitution Based on Unjust Enrichment
*(On behalf of Plaintiff and the Nationwide Class and California Subclass)*

107.    Plaintiff incorporates the preceding allegations as though fully set forth herein.

108.    Plaintiff pleads this claim in the alternative pursuant to Federal Rule of Civil Procedure 8(d). To the extent the Court determines that no valid and enforceable contract governs the challenged conduct, that Anthropic's subscription agreements do not require it to provide the paid access alleged herein, or that Plaintiff and Class Members otherwise lack an adequate remedy at law for Anthropic's retention of the benefits conferred upon it, Plaintiff seeks restitution under principles of quasi-contract and unjust enrichment..

109.    Plaintiff and Class Members conferred direct monetary benefits upon Anthropic by paying subscription fees for Claude Pro, Max 5x, and Max 20x and, in some instances, additional charges for usage after their included access was prematurely depleted.

110.    Anthropic knowingly accepted and retained those payments. Anthropic understood that subscribers paid higher prices for increased usage, higher limits, priority access, fewer interruptions, and usable access to Claude and Claude Code during the applicable subscription periods.

111.    During the Class Period, Anthropic retained the full subscription payments while its peak-hour capacity reduction and backend defects described herein materially diminished the paid services delivered to Plaintiff and Class Members. Among other things, the challenged conduct caused subscribers to move through session limits more quickly, prematurely depleted included usage, interrupted active workflows, caused Claude Code to forget or repeat prior work, and otherwise reduced the practical value of paid access.

112.    Anthropic possessed exclusive knowledge of the systems and records necessary to identify which accounts were affected, determine how much included usage was lost or inefficiently consumed, and measure the extent of the resulting service degradation. Plaintiff and Class Members lacked any meaningful ability to independently identify, verify, or quantify those losses.

113.    It would be inequitable and unjust for Anthropic to retain the entirety of the

21

CLASS ACTION COMPLAINT

subscription fees and additional usage payments attributable to periods in which Plaintiff and Class Members received materially diminished or prematurely depleted paid access.

114.    Anthropic has therefore been unjustly enriched at the expense of Plaintiff and Class Members in an amount to be determined at trial, including the portion of subscription payments attributable to the diminished services and any additional usage charges incurred because included access was prematurely depleted.

115.    Plaintiff and Class Members lack an adequate remedy at law to the extent no enforceable contractual promise governs the challenged conduct or their legal claims do not permit recovery of all subscription fees and additional usage payments unjustly retained by Anthropic. In that circumstance, restitution is necessary to prevent Anthropic from retaining benefits for which it did not provide the corresponding value.

116.    Plaintiff and Class Members are entitled to restitution and disgorgement of the money Anthropic unjustly retained, together with pre- and post-judgment interest and any other relief the Court deems equitable and appropriate.

## PRAYER FOR RELIEF

117.    WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class and California Subclass, requests that the Court:

 a. certify the Nationwide Class and California Subclass, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

 b. declare that Anthropic's challenged acts and practices are unlawful;

 c. award actual, compensatory, nominal, and other damages available at law;

 d. award restitution of the portion of subscription fees and additional usage payments unjustly retained by Anthropic, to the extent authorized by law;

 e. enter appropriate public and classwide injunctive relief requiring clear disclosure of material usage-allocation changes, meaningful account-level usage information, and fair remediation for material degradation of paid service;

 f. award pre- and post-judgment interest;

 g. award reasonable attorneys' fees and costs where authorized; and

CLASS ACTION COMPLAINT

h.   grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

118.   Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  July 27, 2026

/s/ *Matthew W. Ruan*
Matthew W. Ruan (SBN 264409)
Jonathan M. Jagher (*pro hac vice forthcoming*)
Nicholas R. Lange (*pro hac vice forthcoming*)
**JUSTICE JAGHER LONDON & MILLEN LLC**
100 Tri-State International Drive,
Suite 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
Fax: (224) 632-4521
mruan@jjlmlaw.com
jjagher@jjlmlaw.com
nlange@jjlmlaw.com

Katrina Carroll (*pro hac vice forthcoming*)
**CARROLL SHAMBERG LLC**
111 W. Washington Street Suite 1240
Chicago, IL 60602
Tel: (872) 215-6205
katrina@csclassactions.com

*Attorneys for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT

Matthew W. Ruan (SBN 264409)
**JUSTICE JAGHER LONDON & MILLEN LLC**
100 Tri-State International Drive,
Suite 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
Fax: (224) 632-4521
mruan@jjlmlaw.com

*Attorney for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ISABELO PASCUAL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ANTHROPIC, PBC<br><br>    Defendant. | Case No.<br><br>**CLRA VENUE DECLARATION** |

I, Matthew W. Ruan, declare as follows:

1.   I am an attorney of record in this matter and an individual over eighteen years of age. I make this declaration pursuant to California Civil Code § 1780(d).

2.   The Complaint in this action is filed in a proper place because Defendant Anthropic, PBC maintains its headquarters and principal place of business at 500 Howard Street, San Francisco, California 94105, in San Francisco County. Anthropic is headquartered in, resides in, and does business in San Francisco County. California Civil Code § 1780(d) permits an action under the Consumers Legal Remedies Act to be filed in the county where the defendant has its principal place of business or is doing business. Venue is therefore proper in the San Francisco Division of the United States District Court for the Northern District of California.

3.   I declare under penalty of perjury under the laws of California and the United States that the foregoing is to my knowledge true and correct.

Dated:  July 27, 2026          /s/ *Matthew W. Ruan*
                               Matthew W. Ruan

CLRA VENUE DECLARATION